**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

AMY V. HINES,

    Plaintiff,

    v.

MICHAEL J. ASTRUE, COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

CIVIL ACTION NO. 11-1318 (MLC)

**MEMORANDUM OPINION**

---

**COOPER, District Judge**

The plaintiff, Amy V. Hines ("Plaintiff"), applies for judicial review of the final decision of the defendant, the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB"). (Dkt. entry no. 1, Compl.) The Court has jurisdiction pursuant to 42 U.S.C. § ("Section") 405(g). The Court, for the reasons stated herein, will affirm the Commissioner's decision.

### BACKGROUND

Plaintiff filed a claim for DIB on July 27, 2007, alleging that she became unable to work on June 14, 2006. (Administrative Record ("A.R.") at 140-46.) The Commissioner denied the claim on January 3, 2008. (Id. at 80-82.) Plaintiff sought

reconsideration of the decision, which the Commissioner denied on April 23, 2008.  (Id. at 85-87.)  On June 3, 2008, Plaintiff timely requested a hearing before an administrative law judge. (Id. at 88-89.)  Administrative Law Judge Mark G. Barrett ("ALJ") conducted a hearing on January 19, 2010, in which Plaintiff was represented by counsel.  (Id. at 12.)

The ALJ issued a decision on May 7, 2010, finding, inter alia, that Plaintiff: (1) "meets the insured status requirements of the Act through December 31, 2011"; (2) "has not engaged in substantial gainful activity since June 14, 2006"; (3) "has the following severe impairment: labyrinthitis (20 C.F.R. 404.1520(c))"; (4) "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1"; (5) "has the residual functional capacity to lift and/or carry at least 20 pounds; to stand and/or walk for 2 hours and sit for 6 hours in an 8-hour workday; and to occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl," but because "she finds it difficult to balance [she] should avoid exposure to workplace hazards including unprotected heights and moving machinery"; (6) "is capable of performing past relevant work as a computer programmer" because such work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity"; and (7) "has not been under a disability,

2

as defined in the Social Security Act, from June 14, 2006, through the date of this decision (20 C.F.R. § 404.1520(f))." (Id. at 17-23.)

The ALJ concluded that Plaintiff was not entitled to DIB. (Id. at 24.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on May 21, 2010. (Id. at 10-11.)  The Appeals Council denied Plaintiff's request for review on January 4, 2011.  (Id. at 1-5.)  Plaintiff applied for review here on March 8, 2011.

**DISCUSSION**

**I.   Standard Of Review**

The Court may review a final decision of the Commissioner of Social Security in a disability proceeding.  42 U.S.C. § 405(g). The Court may affirm, modify, or reverse the Commissioner's decision with or without remanding the case for a rehearing. Id.  This judicial review, however, is limited.  The Court must affirm the Commissioner's decision regarding disability benefits if an examination of the record reveals that the findings of fact are supported by substantial evidence.  Id.; Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  "Substantial evidence" in the context of a Social Security matter is defined as less than a preponderance of the evidence but "more than a mere scintilla," i.e., such evidence "as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

Perales, 402 U.S. 389, 401 (1971) (quotation and citations
omitted).  This standard "is deferential and includes deference
to inferences drawn from the facts if they, in turn, are
supported by substantial evidence."  Schaudeck v. Comm'r of Soc.
Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

Despite the deference given to administrative decisions
under this standard, the Court "retain[s] a responsibility to
scrutinize the entire record and to reverse or remand if the . .
. decision is not supported by substantial evidence."  Smith v.
Califano, 637 F.2d 968, 970 (3d Cir. 1981).  Furthermore,

> [a] single piece of evidence will not satisfy the
> substantiality test if the [Commissioner] ignores, or
> fails to resolve, a conflict created by countervailing
> evidence.  Nor is evidence substantial if it is
> overwhelmed by other evidence - particularly certain
> types of evidence (e.g., that offered by treating
> physicians) - or if it really constitutes not evidence
> but mere conclusion.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  "That the
record contains evidence which could have supported a different
conclusion does not undermine" the Commissioner's decision
provided that the record contains substantial evidence
supporting that decision.  Rivera v. Shalala, No. 94-2740, 1995
WL 495944, at *3 (D.N.J. July 26, 1995).  The Commissioner is
required, however, to address and reconcile medical evidence
that would support a contrary conclusion.  Schaudeck, 181 F.3d
at 435.

## II.  Eligibility For Disability Insurance Benefits

The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is determined to be disabled if the individual's "physical or mental impairment or impairments are of such severity that [the individual] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

An ALJ employs a five-step process in determining whether a person is "disabled."  In the first step, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is so engaged, the ALJ will find that the claimant is not disabled and deny the application for disability benefits.  Id. § 404.1520(b).  If the claimant is not employed, the ALJ will consider the medical severity and duration of the claimant's impairment or combination of impairments in the second step.  Id. § 404.1520(a)(4)(ii).  A "severe impairment" is one that significantly limits the claimant's physical or mental ability

to do basic work activities, including, <u>inter alia</u>, (1) sitting, lifting, and speaking, (2) responding appropriately to supervision and co-workers, and (3) understanding, carrying out, and remembering instructions.  <u>Id.</u> § 404.1521(a)-(b).  A claimant not meeting this requirement is not disabled.  <u>Id.</u> § 404.1520(c).  Thus, the second step requires a threshold-level demonstration of severe impairment without consideration of the claimant's age, education, and work experience.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987).

If the claimant shows a severe impairment, the ALJ then moves to the third step to determine whether the impairment is listed in section 20, part 404, subpart P, appendix 1 of the C.F.R.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment meets or equals a listed impairment, then the claimant is presumed to be disabled, and the evaluation ends at this stage. <u>Id.</u> § 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the ALJ proceeds to step four.  <u>Id.</u> § 404.1520(a)(4).

The ALJ must determine at step four whether the impairment prevents the claimant from returning to the work that the claimant performed in the past.  <u>Id.</u> § 404.1520(a)(4)(iv).  The claimant, if able to resume the previous work, will not be considered disabled.  <u>Id.</u>  If the claimant cannot resume previous work, the ALJ then moves to step five and considers the

claimant's ability to perform other work that is available in the national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(e). This inquiry requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  Id.  A claimant will be found disabled if the claimant is unable to adjust to any other work in the national economy.  Id. § 404.1520(g).

The claimant has the initial burden of production for the first four steps of the evaluation process.  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Once a claimant meets this burden, the burden shifts to the Commissioner in step five to show that the claimant has the transferable skills that would allow him or her to engage in alternative substantial gainful employment.  Id.

### III. Analysis of Plaintiff's Claim

Plaintiff argues that the ALJ's findings are not supported by substantial evidence.  (Dkt. entry no. 12, Pl. Br. at 1.) Specifically, Plaintiff claims that the ALJ erred by (1) assigning inadequate weight to Dr. Abrams's opinion on Plaintiff's work-related limitations, (2) failing to properly include Plaintiff's symptom of dizziness in determining that she is capable of returning to her past relevant work, and (3) improperly discrediting Plaintiff's statements regarding her condition. (Id. at 10-16.)  The Commissioner argues, in contrast, that

7

substantial evidence supports the ALJ's decision that Plaintiff was not disabled.  (Dkt. entry no. 13, Def. Br. at 13.)

In determining whether a claimant is entitled to DIB, the ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects."  Plummer, 186 F.3d at 429.  The ALJ need not engage in a comprehensive analysis when explaining why probative evidence is being rejected. Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981).  Rather, a short sentence or paragraph explaining the basis upon which the ALJ is rejecting evidence will suffice.  Id.  The ALJ is not required to reference each and every treatment notation with particularity in the analysis, but must "consider and evaluate the medical evidence in the record consistent with [the] responsibilities under the regulations and case law."  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

An ALJ "may choose whom to credit" when a conflict in the evidence exists, but may not "reject evidence for no reason or for the wrong reason."  Plummer, 186 F.3d at 429 (quotation and citation omitted).  "When the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  While treating physicians' opinions are "accorded great weight," an ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which

supporting explanations are provided." Plummer, 186 F.3d at 429 (citation omitted).

The Court need not examine the ALJ's step one determination that Plaintiff has engaged in "substantial gainful activity" after her alleged disability onset date. (A.R. at 17.) Plaintiff does not challenge the ALJ's finding at step two that she suffered from the severe impairment of labyrinthitis. (See id.) Plaintiff also does not challenge the ALJ's finding at step three that she did not automatically qualify as disabled under any listed impairment. Further, the Court need not consider step five because the Court finds that the ALJ's step four determination that Plaintiff could perform past relevant work is supported by substantial evidence. (See id. at 39-42.) Therefore, the Court will address the ALJ's determinations at step four.

Plaintiff contends that the ALJ erred at step four of the sequential analysis because his decision that Plaintiff's residual functional capacity allowed her to perform sustained, full-time work was not based on substantial evidence. Before proceeding to step four and step five in the sequential analysis, the ALJ must determine whether Plaintiff's impairment prevents her from returning to the work that she performed in the past. 20 C.F.R. § 404.1520(a)(4)(iv). This requires a determination of Plaintiff's residual functioning capacity ("RFC"), which is

defined as "the most you can still do despite your limitations."
Id. § 404.1545(a)(1).  To properly assess an individual's RFC,
the ALJ must consider all the relevant evidence in the record.
Id.  In addition to considering an individual's ability to
perform specific work activities, a determination of an
individual's RFC necessarily involves consideration of whether
that individual is capable of performing the relevant work
activities on a "regular and continuing basis."  See id. §
404.1545(b); SSR 96-8P, "Assessing Residual Functional Capacity
in Initial Claims," 1996 WL 374184 (S.S.A. July 2, 1996) (stating
that "RFC is an assessment of an individual's ability to do
sustained work-related physical and mental activities in a work
setting on a regular and continuing basis").

**A.  ALJ's Consideration of the Opinion of Dr. Abrams in
Formulating RFC**

Plaintiff asserts that in determining that her RFC allowed
her to work on a regular and continuing basis and to return to
her past relevant work, the ALJ failed to give adequate weight
to the opinion of Dr. Abrams in deciding that Plaintiff was not
capable of performing sustained, full-time work.  (Pl. Br. at
9.)  The Court finds that the ALJ's decision to assign minimal
weight to the Medical Source Statement ("MSS") of Dr. Abrams was
supported by substantial evidence.  "A cardinal principle guiding
disability eligibility determinations is that the ALJ accord

10

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer, 186 F.3d at 429 (internal citations omitted).[1] Additionally, "[i]n considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant."  Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994).

Plaintiff argues that Dr. Abrams was Plaintiff's only treating physician and therefore his opinion should be given great if not controlling weight.  (See Pl. Br. at 12.)  Plaintiff consulted with Dr. Abrams at the request of her attorney.  (A.R. at 68-69.)  Therefore, Dr. Abrams should not be considered a treating doctor.  See 20 C.F.R. § 404.1502 (explaining that a medical source will not be considered a treating source when Plaintiff's relationship with the doctor does not arise out of a medical need for treatment or evaluation but rather arises from a need to obtain a report in support of a disability claim).

---

[1]  A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient.  20 C.F.R. § 404.1502.  A medical source may be considered a treating source where the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition(s)."  Id.

Dr. Abrams opined in his MSS that Plaintiff's impairments "do prevent her from working in her usual capacity" and that she could not engage in "gainful employment . . . given these ongoing symptoms." (A.R. at 358.)  Thus, not only was Dr. Abrams not a treating physician, but his MSS was an opinion on an issue reserved to the Commissioner because it addresses whether Plaintiff is disabled as defined by the Act.  20 C.F.R. § 404.1527; SSR 96-5P, "Medical Source Opinions on Issues Reserved to the Commissioner," 1996 WL 374183 (S.S.A. July 2, 1996). Opinions that are either from a non-treating source and/or on an issue reserved to the Commissioner are never entitled to controlling weight, and therefore must be weighed against all of the other evidence in the record.  See 20 C.F.R. § 404.1527; SSR 96-5P.  In determining the weight of a doctor's opinion, the ALJ is required to consider, inter alia, the length, nature, and extent of the treatment relationship, the medical evidence presented in support of the opinion, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c).

Plaintiff argues that the ALJ gave greater weight to the opinions of Dr. Pasupuleti and Dr. Alexeeva over Dr. Abrams solely because Dr. Abrams saw Plaintiff on only one occasion. (Pl. Br. at 12.)  However, this contention is inaccurate, because the ALJ also pointed out that Dr. Abrams's opinion is unsupported by his own findings and inconsistent with the rest

of the record, including Plaintiff's own statements, other objective medical evidence, and the opinions of Dr. Pasupuleti and Dr. Alexeeva.  (A.R. at 22-23.)

The only objective explanation for Dr. Abrams's opinion was his finding of nystagmus, which does not necessarily support the dramatic limitations that Dr. Abrams asserts.  (Id. at 358.)[2] Dr. Abrams did not provide any objective evidence of the frequency, persistence, and intensity of Plaintiff's symptoms to support his opinion.  Dr. Abrams's opinion that Plaintiff required 1-2 hours of supine rest on a daily basis is inconsistent with Plaintiff's statements that her dizzy spells are "erratic" and "unpredictable."  (A.R. at 55 (Plaintiff's testimony about the frequency of her dizzy spells); id. at 169 (function report by Plaintiff); id. at 361 (Dr. Abrams's MSS describing how Plaintiff's symptoms limit her ability to work).) In fact, Plaintiff asserts in her brief that her "unpredictable dizziness . . . requires supine rest on an unpredictable basis." (Pl. Br. at 10.)  Dr. Abrams's MSS also asserts that side effects from Plaintiff's Xanax would affect Plaintiff's functioning at work.  (A.R. at 361.)  However, Plaintiff testified that she does not experience any side effects from her medication.  (Id. at 61.)  Further, Dr. Abrams's opinion is inconsistent with

---

[2] "Nystagmus is a term to describe fast, uncontrollable movements of the eyes."  Medline Plus, Nystagmus, U.S. Nat'l Library of Med., http://www.nlm.nih.gov/medlineplus/ency/article/003037.htm.

Plaintiff's normal results on physical tests performed by other
doctors.  (See id. at 259-73, 351-56, 367-70.)

As the ALJ properly noted, Dr. Pasupuleti and Dr. Alexeeva
are treating physicians because they have seen Plaintiff on more
than one occasion, have given her physical examinations, and
have made treatment recommendations to her.  (See id. at 23 (ALJ
hearing decision); id. at 259-73 (office treatment records from
Dr. Pasupuleti); id. at 350-56 (office treatment records from
Dr. Alexeeva)).  Dr. Pasupuleti suggested that Plaintiff was able
to return to work about a month after she first experienced her
symptoms.  (Id. at 272-73.)  Dr. Alexeeva opined that Plaintiff
was "really not disabled."  (Id. at 356.)  Thus, the opinions of
Dr. Pasupuleti and Dr. Alexeeva were on issues reserved to the
Commissioner, but Plaintiff is incorrect in asserting that
opinions on issues reserved to the Commissioner "are not subject
to evaluation pursuant to 20 C.F.R. § 404.1527."  (Pl. Br. at
11.)  Although opinions on issues reserved to the Commissioner
are never automatically entitled to controlling weight, the ALJ
is required to evaluate such opinions according to the factors
set out in 20 C.F.R. § 404.1527, and may not ignore them.  See
SSR 96-5P.

The ALJ was entitled to give greater weight to the opinions
of Dr. Pasupuleti and Dr. Alexeeva as long as he provided
reasons for doing so, which he did.  See Plummer, 186 F.3d at

14

429; Cotter, 642 F.2d at 705.  Several pages of medical records accompanied the opinions of Dr. Pasupuleti and Dr. Alexeeva, while Dr. Abrams's opinion was accompanied only by his finding of nystagmus.  (A.R. at 259-73 (office treatment records from Dr. Pasupuleti); id. at 351-56 (office treatment records from Dr. Alexeeva); id. at 357-66 (medical report from Dr. Abrams).)  See Chanbunmy v. Astrue, 560 F.Supp.2d 371, 387 (E.D. Pa. 2008) (finding it acceptable for the ALJ to give greater weight to the opinion of a doctor who provided a detailed report with specific findings, than that of a doctor who provided "very few words of explanation" with his opinion).  The opinions of Dr. Pasupuleti and Dr. Alexeeva were consistent with Plaintiff's previous reports that her dizzy spells had improved and she was not currently being treated for the same.  Further, two state medical examiners opined that the Plaintiff was capable of returning to her past work.  (A.R. at 307-14, 339-48.)  The ALJ was not required to accept Dr. Abrams's opinion that Plaintiff's impairments rendered her unable to work or to accord it controlling weight.  Rather, there was substantial evidence in the record for the ALJ to conclude that Dr. Abrams's opinion should be given minimal weight.  The Court will defer to the Commissioner's decision insofar as it adopted the ALJ's findings with respect to Dr. Abrams.

15

### B.   ALJ's Rejection of Plaintiff's Dizziness in Formulating RFC

Plaintiff argues that the ALJ did not include "any limitation related to the Plaintiff's dizziness in the formulation of RFC." (Pl. Br. 10.)  The Court finds that, contrary to Plaintiff's argument, the ALJ did not "essentially reject" Plaintiff's dizziness in formulating her RFC.  (Id.)

The ALJ, in assessing RFC, must consider limitations caused not only by the claimant's impairment alone, but also the limiting effects of any related symptoms, even those that are "not severe."  SSR 96-8P.  The ALJ uses a two-step process in evaluating symptoms.  When evaluating a claimant's symptoms in formulating the RFC, the ALJ must first determine whether there is a "medically determinable impairment" that could "reasonably be expected" to produce the symptom complained of.  20 C.F.R. § 404.1529.  Then the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities," which "requires the adjudicator to make a finding about the credibility of the individual's statements."  SSR 96-7P, "Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," 1996 WL 374186 (S.S.A. July 2, 1996).  See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d. Cir. 1999).

The ALJ, while not fully crediting Plaintiff's statements for reasons discussed below, explicitly took her statements about her dizziness into account when deciding to reject the RFC suggested by two state agency medical reviewers.  (A.R. at 22.) Therefore, the ALJ did not ignore Plaintiff's symptoms in formulating her RFC.  Instead, the ALJ expressly accepted that dizziness resulted from Plaintiff's impairment, and only somewhat discredited Plaintiff's statements about the frequency, intensity, and limiting effects of the dizziness.  The Court finds no basis for remand in Plaintiff's assertion that the ALJ failed to consider her dizziness in formulating the RFC.

### C.    ALJ's Determination of Plaintiff's Credibility

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff argues that her own testimony is not inconsistent with the other statements in the record, her daily activities do not suggest she is capable of working, and her non-compliance with treatment recommendations is due to lack of health insurance and not improvement of symptoms.  (Pl. Br. at 13-17.)  The Court finds that the ALJ's credibility determination, which resulted in a finding that Plaintiff was capable of performing past relevant work, was based on substantial evidence.

The ALJ must give "serious consideration to the plaintiff's subjective complaints of pain, even when those assertions are

17

not fully confirmed by objective medical evidence." Mason v. Shalala, 994 F.2d 1058, 1067 (3d. Cir. 1993) (citation omitted). As long as the ALJ gives reasons other than a lack of objective evidence supporting the subjective complaints, the reviewing court should accept the ALJ's credibility determination. See Reyes v. Comm'r of Soc. Sec., No. 07-3884, 2008 WL 1995144, at *6 (D.N.J. May 5, 2008) ("[I]t is well within the discretion of the Commissioner to evaluate the credibility of Plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of. . . symptoms") (citation omitted). See also SSR 96-7P (stating that an adjudicator cannot reject an individual's subjective complaints "solely because they are not substantiated by objective medical evidence," but must give other reasons for the credibility determination).

The ALJ correctly concluded that Plaintiff's testimony at the hearing was inconsistent with other evidence in the record. See id. ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.")  Plaintiff testified at the hearing that her dizzy spells occur on average once a week, but that she can go 2-3 weeks without having a dizzy spell.  (A.R. at 55.)  However, during her visit with Dr. Alexeeva, she failed to mention that her dizzy spells happen once

a week and only reported that she could go 2-3 weeks without a dizzy spell. (Id. at 351.) Plaintiff also testified that her life has "become" that of a hermit since her impairments began. (Id. at 72.) In her initial application paperwork for DIB, however, Plaintiff reported that she avoided social activities even before her impairments began. (Id. at 173.)

Plaintiff argues that the ALJ erred in finding that her daily activities suggest an ability to maintain consistent work activity, because she only engages in those daily activities when she is not having a dizzy spell. The ALJ acknowledged, however, that Plaintiff reported that she can watch movies or read unless she is having a "particularly bad spell." (Id. at 213.) Even if Plaintiff does experience dizzy spells once a week as she asserts, there is nothing to suggest that each weekly spell is "particularly bad" such that she is completely debilitated. In fact, Plaintiff testified that her spells vary in intensity. (Id. at 72.)

Plaintiff also argues that because the ALJ conceded that driving was a trigger to her dizzy spells, he should have concluded that she was unable to commute to a job. (Pl. Br. at 15.) However, the ALJ was not required to determine that she could not return to her past work simply because her ability to commute to work was limited. See SSR 82-61P, "Past Relevant Work--The Particular Job or the Occupation as Generally

19

Performed," 1982 WL 31387 (S.S.A. Aug. 20, 1982) (listing factors that an ALJ should consider to determine whether an individual can return to past relevant work without mentioning ability to commute); cf. Pass v. Chater, 65 F.3d 1200, 1204 (4th Cir. 1995) (explaining that a determination that an individual can return to past relevant work involves only an assessment of that individual's capacity to perform the tasks involved in the job).

The ALJ also properly rejected Plaintiff's statements about the intensity, frequency, and limiting effects of her symptoms based on Plaintiff's treatment history and failure to follow treatment recommendations. See SSR 96-7P (stating that a plaintiff's statements about symptoms "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.") There was substantial evidence in the record for the ALJ to infer that Plaintiff's symptoms had improved and were no longer as limiting as she claimed them to be. Plaintiff did not seek treatment for her dizzy spells since her last visit with Dr. Pasupuleti, during which she reported that her spells had improved. (A.R. at 269.) She made no mention of her dizzy spells until her third visit with Dr. Alexeeva. (Id. at 351.) Plaintiff was no longer on any prescription medication for her dizziness except

for Xanax, which she only used occasionally.  (Id. at 58-59.)
Further, Plaintiff was never hospitalized for her condition.
(Id. at 61.) See Reyes, 2008 WL 1995144, at *7 (finding that
plaintiff's subjective complaints of pain and disabling
limitations were not supported where plaintiff was never
hospitalized for her condition and did not take any medication
for her alleged pain).

Contrary to Plaintiff's testimony that her doctors "threw
up their hands" and told her there was nothing more they could
do, Plaintiff's medical records show otherwise.  Dr. Alexeeva
recommended that Plaintiff should have additional testing;
specifically, a carotid Doppler and transcranial Doppler.  (A.R.
at 61, 352.)  Dr. Pasupuleti suggested that Plaintiff receive
treatment at The Balance Center.  (Id. at 269.)  The ALJ thus
had substantial evidence in the record to reject Plaintiff's
contention that her doctors failed to offer her any solutions to
her impairments.  The Court therefore finds that the ALJ's
finding that Plaintiff's statements regarding the intensity,
persistence, and functionally limiting effects of her symptoms
were not entirely credible, was based on substantial evidence.

## CONCLUSION

For the reasons discussed supra, the Court will affirm the Commissioner's decision denying Plaintiff's claim.  The Court will issue an appropriate Order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:   July 6, 2012